| ¡WHIPPLE, J.,
dissenting.
At the outset, I find no legal basis for the re-designation of this docketed and assigned case as a “per curiam” by unilateral action of one judge, in contravention of the rules of this court, absent a conference vote to allow such a deviation from our internal rules. Specifically, Rule 2.3 d(l)(a) of the Internal Rules of Court, First Circuit Court of Appeal provides for cases to be randomly allotted to a panel with one judge on the panel designated as primary (or writing) judge. Additionally, under the policies of this court, if the opinion of the primary judge does not garner the necessary votes, the back-up judge then becomes the author.
By practice, panels (or even the conference) can agree to issue an opinion as a per curiam. Additionally, Rule 4.1 of this court’s internal rules further provides that in instances where the court’s rules do not expressly provide for a particular situation, the chief judge is the judge charged with the authority to act and “shall act in the best interest of the court, subject to review by the conference.” However, the minutes of the conference do not reflect any approval, by either the en banc conference or the chief judge of this court, allowing the judge who became the authoring judge herein to hand down this matter as a “per curiam opinion with a concurrence” (and to thereby accomplish affirming the defendant’s conviction and sentence). There are important and valid policy reasons why en banc courts adopt, and should then follow, procedural rules to govern the conduct of the business of the court.
| ¡.Additionally, I note that the procedure being employed by Judge Kuhn herein, that is, the issuance of a purported “per curiam” with no majority opinion[1] being issued, is the same flawed procedure that was attempted by the Second Circuit Court of Appeal, a procedure which the Supreme Court rightfully and properly termed a “procedural mishap.” See Maranto v. Goodyear Tire & Rubber Company, 25,114 (La.App. 2nd Cir.10/5/94), 643 So.2d 173, reversed, 94-2603, 94-2615 (La.2/20/95), 650 So.2d 757.
In particular, I question whether the “ruling” of the purported “per curiam” herein (and accompanying concurrence) allowing the conviction and sentence to “stand” (as if this is somehow distinguishable from an affirmance of same) can have any legal or constitutional effect. Pursuant to LSA-Const. art. V, § 8(A), each court of appeal shall sit in panels of at least three judges. The Uniform Rules — • Courts of Appeal further provide that “[wjhen authorized by law, or when the court deems it necessary to promote justice or expedite the business of court, the court may sit in panels of more than 3 judges or en banc.” Uniform Rules— *897 Courts of Appeal, Rule 1-5. Additionally, this court’s internal rules require that the court sit en banc to overrule existing published and unpublished First Circuit jurisprudence or to resolve a conflict between decisions of this court. Internal Rules of Court, First Circuit Court of Appeal Rule 2.1 d(l) and (4).
Most importantly, with regard to rendition of an opinion, the Louisiana Constitution dictates clearly that “[a] majority of the judges sitting in a case must concur to render judgment.” LSA-Const. art. V, § 8 (emphasis added); Pattan v. Fields, 95-2342 (La.9/25/95), 661 So.2d 142.
Notably, in State v. Mathews, 2002 KA 2267 (La.App. 1st Cir.5/9/03), 844 So.2d 423 (unpublished), a previous case likewise involving a unanimous jury verdict (12-0) | ^finding defendant guilty of fourth offense DWI, a three-judge panel of this court found reversible patent error due to the incorrect number of jurors. In the instant case, the court chose to consider the appeal en banc, and all twelve judges have participated herein. Thus, the majority of this twelve-judge court necessary to render judgment (and to overrule existing First Circuit jurisprudence) is seven judges. See Pattan, 95-2342, 661 So.2d at 142 (A majority of a thirteen-judge court is seven); Dauzat v. Allstate Insurance Company, 257 La. 349, 242 So.2d 539, 546 (1970) (A majority of a six-judge court is four); and McLaughlin v. Fireman’s Fund Insurance Company, 582 So.2d 203, 234 (La.App. 1st Cir.), writ denied, 586 So.2d 536 (La.1991) (on rehearing) (A majority of a ten-judge court is six). In this case, only six judges of the twelve judges sitting en banc have agreed to allow the conviction and sentence of the trial court to “stand.” Thus, there are not seven votes to render a judgment either affirming or reversing the conviction.[2] Therefore, any purported judgment of less than a majority of this court allowing the conviction and sentence to “stand,” which obviously has the effect of affirming the conviction and sentence, is invalid. Pattan, 95-2342, 661 So.2d at 142. Additionally, I note that in the absence of a majority vote by the en banc court to reverse this court’s prior opinion of State v. Mathews, which opinion was directly on point herein, by our own internal rules, this court remains bound by State v. Mathews, and the conviction must be reversed in keeping with the decision on this issue of law previously and directly addressed by members of this court.
Setting aside my objections to the procedures employed herein, the paramount issue, in my view, is that the defendant has a constitutional right to ^appellate review of his criminal conviction to this court. See LSA-Const. art. 5, sec. 10. In the instant case, the issuance of a “per curiam” decreeing that the conviction and sentence “stand” because this court of twelve is unable to reach a majority has effectively deprived the defendant of any constitutional review of the case by this court.
Given the 6/6 split of the votes in this case, the Louisiana Supreme Court could easily appoint a judge ad hoc to participate in this matter as a thirteenth judge of the court See Dauzat, 245 So.2d at 452 (wherein the Supreme Court noted that it took *898 four of the court’s six judges to decide an en banc case and, thus, on remand the case was heard with another judge added to break a possible tie). Alternatively, this court could employ the provisions of LSA-Const. art. V, sec. 11, which sets forth that a court of appeal can certify any question of law to the Louisiana Supreme Court, with the Supreme Court then either issuing a binding instruction or deciding the case upon the whole record. This approach certainly seems appropriate in the present situation.
Nevertheless, should a superior court find a valid “per curiam” opinion has been rendered herein, I respectfully dissent from the six-vote “per curiam” decision to allow the conviction to stand, as being directly contrary to the constitution and jurisprudence of this court and the Supreme Court of this state. Louisiana Code of Criminal Procedure article 920, entitled “Scope of appellate review”, provides that “The following matters and no others shall be considered on appeal: ... (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.” (Emphasis added.) Louisiana Code of Criminal Procedure article 5, entitled “Mandatory and permissive language,” provides, in pertinent part, that “The word ‘shall’ is mandatory.” (Emphasis added.) This language is clear and unambiguous. Its application is not limited to errors favorable or unfavorable to either the state or a criminal defendant. | sLouisiana Civil Code article 9 states the basic rule for the interpretation of laws and provides, in pertinent part, that “[w]hen a law is clear and unambiguous ... the law shall be applied as written.” State v. Paoli, 2001-1733, p. 6 (La.App. 1st Cir.4/11/02), 818 So.2d 795, 799 (en banc), writ denied, 2002-2137 (La.2/21/03), 837 So.2d 628. In my view, as mandated by Article 920, a patent error review of the record on appeal discloses patent error herein, and those concurring in this purported “per curiam” err in failing to so find.
The minutes and transcript reflect that defendant in this case was tried by a twelve-member jury on the charge of DWI-fourth offense. At all relevant times, LSA-R.S. 14:98 E(l)(a) provided in pertinent part that upon conviction, a defendant shall be imprisoned with or without hard labor for a period of not less than ten nor more than thirty years and shall be fined five thousand dollars. The statute further provided that sixty days of any sentence imposed shall be served without benefit of probation, parole, or suspension of sentence, that the remainder of the sentence shall be suspended, and that the offender shall be required to undergo evaluation and treatment for his substance abuse disorder. Louisiana Constitution Article I, § 17 A and LSA-C.Cr.P. art. 782 A provide that cases in which punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict. Accordingly, a six-person jury clearly was required for defendant’s trial in this case.[3]
*899 Despite the ambitious effort of my learned colleague, in his authorship of the “per curiam,” accompanied by his lead concurring opinion, and the valiant attempts Ifito find a way around the Louisiana Constitution and the prior pronouncements of both this court and the Louisiana Supreme Court, an error in the number of jurors trying á defendant constitutes patent error. See State v. Smith, 367 So.2d 857, 858 (La.1979) (per curiam). As clearly set forth therein, a verdict returned by a jury composed of either more or less than the correct number of jurors is null. Smith, 367 So.2d at 858. Until the Louisiana Supreme Court or the Constitution provides otherwise, the requirement of a properly constituted jury stands. Since defendant was tried by a jury of twelve for this offense, the Louisiana Supreme Court (or a true majority of this court en banc) should reverse the conviction, vacate the sentence, and remand the case to the district court for a new trial. See State v. Brown, 2002-2231, pp. 5-6, 11 (La.App. 1st Cir.5/9/03), 849 So.2d 566, 569-570, 573.
In a constitutional system, there is no support for a “technical” trial as alluded to in my learned colleague’s concurrence. The Louisiana Constitution is clear in its directive: the state was required to try this matter before a jury of six persons, all of whom must concur to render a verdict. Judicial activism to reach a desired result can not supercede principles of constitutional due process. In the leading concurring opinion, the author would affirm the conviction on the basis that this defendant “has been unanimously found guilty by two 6-person juries,” that a verdict of guilty in a new trial before a property constituted six-person jury would grant him “more due process than a person charged with a capital offense,” and that “sophisticated procedures ... ensure an accused considerable protection.” I disagree. Our system of justice calls for constitutional trials, not “technical trials,” absent amendment of the constitution to provide otherwise.[4]
For these reasons, I respectfully dissent.
PETTIGREW, J., dissents, and assigns reasons.

. As reflected herein, Judges Kuhn, Foil, Fitz-simmons, Gaidiy, McDonald and McClendon would affirm the conviction or "allow the judgment of conviction ... [to] stand.”

. It is quite interesting to note that the lead concurring authoring judge resorts to mathematical principles in attempting to justify allowing the conviction herein to stand (i.e., where 12 persons have rendered a verdict, 6 persons, as a subset of the larger group of 12 persons, have necessarily rendered a verdict), yet completely ignores the basic mathematical principle that 6 is not a majority of 12 in agreeing with the result of allowing the conviction and sentence to “stand,” which, as noted above, effectively affirms the conviction and overrules existing First Circuit caselaw without a majority vote.

. Under La. R.S. 14:98 E(4)(a), imprisonment at hard labor shall be imposed if the offender has previously been required to participate in substance abuse treatment and home incarceration under Subsection D of La. R.S. 14:98. The predicate offenses cited in the bill of information involved convictions in 1997, 1994, 1992, and 1990. At all times relevant to those convictions, there was no provision for home incarceration in Subsection D of La. R.S. 14:98. State Exhibit 8, transcript page 37 shows that defendant's sentence on the 1990 conviction did not include home incarceration. State Exhibit 9, transcript page 36 shows that defendant's sentence on the 1992 conviction did not include home incarceration. State Exhibit 14, shows that defendant's sentence for his 1994 conviction did *899 not include home incarceration.. State Exhibit 13, transcript page 3 shows that defendant’s sentence for his 1997 conviction did not include home incarceration. Thus, La. R.S. 14:98 E(4)(a) is inapplicable in this case.

. Indeed, juror No. 7 could have been the juror to sway the entire improperly constituted panel of twelve.